UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELOY MASCORRO,<br><br>                                  Plaintiff,<br><br>v.<br><br>THE CITY OF SAN DIEGO, et al.,<br><br>                                  Defendants. | Case No.:  21-cv-1427-RSH-DDL<br><br>**ORDER: (1) GRANTING CITY OF SAN DIEGO'S MOTION TO DISMISS;**<br><br>**(2) GRANTING AND DENYING IN PART POLICE OFFICER AND PARK RANGER DEFENDANTS' MOTION TO DISMISS;**<br><br>**(3) GRANTING HOUSE OF PACIFIC RELATIONS INTERNATIONAL COTTAGES INC. AND MAURY LEE'S MOTION TO DISMISS AND MOTION TO STRIKE;**<br><br>**(4) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(5) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE NEW LAWSUITS**<br><br>[ECF Nos. 121, 122, 123, 125, 131, 134] |

1

1    Before the Court are: a motion to dismiss filed by the City of San Diego (the "City"),
2    ECF No. 121; a motion to strike filed by the House of Pacific Relations International
3    Cottages Inc. ("HPR") and Maury Lee ("Lee"),[1] ECF No. 122; a motion to dismiss filed
4    by HPR and Lee, ECF No. 123; a motion to dismiss filed by Roberto Bejar, Bradford
5    Green, Tyler Hamby, Travis Larson, Sean Losee, Zadok Othniel, Eduardo Rodriguez, and
6    Lorraine Tangog (the "Police Officer and Park Ranger Defendants "), ECF No. 125; a
7    motion for summary judgment filed by Plaintiff, ECF No. 131; and a motion for leave to
8    file new lawsuits filed by Plaintiff, ECF No. 134.

9    For the reasons below, the Court grants the City's motion to dismiss; grants in part
10   and denies in part the Police Officer and Park Ranger Defendants' motion to dismiss; grants
11   the motion to dismiss filed by HPR and Lee, and grants their motion to strike; denies
12   Plaintiff's motion for summary judgment; and denies Plaintiff's motion for leave to file
13   new lawsuits.

14   **I.    PROCEDURAL HISTORY**

15   Plaintiff's operative pleading, and the subject of Defendants' motions, is his Third
16   Amended Complaint. ECF No. 117. The Court begins by setting forth the procedural
17   history that preceded this pleading. With each of Plaintiff's three amended pleadings,
18   Plaintiff has responded to defense motions by filing an amended complaint that is lengthier
19   than its predecessor, that adds new defendants, new causes of action and/or new theories,
20   and that seeks greater damages.

21   On August 10, 2021, Plaintiff filed his four-page pro se Complaint against the City
22   of San Diego (the "City"), Park Ranger John Doe, the San Diego Police Department, San
23   Diego Police Officers 1 through 4, the San Diego Fire Department, and E.M.T.s 1 through
24   3. ECF No. 1. The Complaint was based on an incident on September 20, 2020, in which
25   Plaintiff was arrested after refusing to leave a bench outside the door of the House of

---

[1]    HPR and Lee, together with the House of Norway, Eugene King, and Annelise
Mogstad, are collectively referred to herein as the "HPR Defendants."

Norway in Balboa Park in San Diego. *Id*. at 2. Plaintiff brought claims for violations of his First, Fourth, Eighth, and Fourteenth Amendment rights, and requested $200,000 in damages. *Id*. at 3, 5. Thereafter, Defendants moved to dismiss for failure to state a claim. ECF No. 35. While the motion to dismiss was pending, Plaintiff moved to amend his complaint. ECF No. 44. The Court granted Plaintiff leave to amend, and denied as moot the motion to dismiss. ECF No. 45.

On November 22, 2022, Plaintiff filed his 23-page First Amended Complaint ("FAC"). ECF No. 46. The FAC retained the City as a defendant, but dropped the other previously-named defendants; and added the House of Pacific Relations ("HPR"), the House of Norway, and Does 1 through 6. *Id*. The FAC included eleven claims, and requested $4.6 million in damages. *Id*. Like the initial Complaint, the FAC was based on Plaintiff's arrest in front of the House of Norway on September 20, 2020. *Id*. Defendants again moved to dismiss for failure to state a claim. ECF No. 50. While the motion to dismiss was pending, Plaintiff moved to amend his pleading again. ECF No. 68. The Court again granted Plaintiff leave to amend, and denied as moot the motion to dismiss. ECF No. 77. In granting leave to amend under these circumstances, the Court advised that "the Court will not in the future grant a motion by Plaintiff to further amend his complaint while a motion to dismiss or motion to strike is pending—to do so would be unfair to Defendants, who would then need to yet again revise and re-file their motions." *Id*. at 2.

On February 27, 2023, Plaintiff filed his 32-page Second Amended Complaint ("SAC"). ECF No. 78. The SAC retained as defendants the City, HPR, and the House of Norway; and added individual defendants Maury Lee, Bradford Green, Travis Larson, and Eduardo Rodriguez. *Id*. The SAC included fourteen claims, and requested $6 million in damages. *Id*. Like the initial Complaint and the FAC, the SAC was based on the September 20, 2020 incident. *Id*. Thereafter, the City filed a motion to dismiss for failure to state a claim, ECF No. 80; HPR filed a motion to dismiss for failure to state a claim, ECF No. 81; and HPR filed a motion to strike, ECF No. 82. With those motions pending, Plaintiff again moved to amend his pleading. ECF No. 87. This time, citing the Court's prior admonition

1   to Plaintiff about seeking leave to amend while defense motions were pending, the Court

2   denied leave to amend.[2] ECF No. 89.

3         On June 29, 2023, the Court granted the City's motion to dismiss, and granted HPR's

4   motion to dismiss and motion to strike. ECF No. 105. The Court ruled that Plaintiff failed

5   to adequately plead a § 1983 claim against the City under *Monell*, and that Plaintiff's state

6   claims against the City were barred by Plaintiff's failure to comply with the presentation

7   requirement of California Government Code §§ 911.2 and 945.4. *Id.* at 5-10. The Court

8   ruled that Plaintiff's § 1983 claims against HPR and Lee failed because these defendants

9   were private parties rather than government actors. *Id.* at 11. Finally, the Court determined

10  that Plaintiff's state claims against HPR and Lee were based on protected activity, namely,

11  Lee's act of contacting a park ranger to report interference with the entrance to HPR's

12  property. *Id.* at 13-15. Because Plaintiff failed to establish a probability of prevailing on

13  the merits of those claims, the Court granted HPR's motion to strike. *Id.* at 15-20. The

14  Court concluded that "[b]ecause there is a possibility that Plaintiff could cure the defects

15  identified above in an amended pleading, the Court will grant Plaintiff leave to amend." *Id.*

16  at 21. The Court advised that any Defendants not named or claims not realleged in the

17  Third Amended Complaint will be considered waived. *Id.* at 23.

18        On August 8, 2023, Plaintiff filed his Third Amended Complaint ("TAC"), the

19  operative pleading. ECF No. 117. The TAC is 34 pages, but unlike the FAC or the SAC,

20  is single-spaced. *Id.* The TAC retains all the defendants from the SAC, but adds new

21  defendants Tyler Hamby, Sean Losee, Lorraine Tangog, Zadok Othniel, Roberto Bejas,

22  Eugene King, and Annelise Mogstad. *Id.* The TAC includes fifteen claims and seeks $8.2

23  million in damages. *Id.* Unlike the preceding pleadings—the original Complaint, the FAC,

---

25
26  [2]    Plaintiff's proposed Third Amended Complaint, which the Court did not accept for
    filing, would have named a Doe defendant as Park Ranger Zadok Othniel, and added a
27  fifteenth claim. ECF No. 87. It would have asked for $9.5 million in damages. *Id.* Like the
    initial Complaint, the FAC, and the SAC, Plaintiff's proposed Third Amended Complaint
28  was based on the September 20, 2020 incident. *Id.*

the SAC, and even the previously-proposed version of the Third Amended Complaint—the TAC seeks damages based on three incidents. In addition to the September 20, 2020 episode at the House of Norway, Plaintiff alleges that he was unlawfully subjected to a pat down in front of the House of Norway on May 29, 2020, *id.* ¶¶ 11, 18; and that he was again unlawfully subjected to a pat down, during which his knife was briefly taken away, on March 29, 2021, *id.* ¶¶ 17, 20.

On August 22, 2023, the City filed a motion to dismiss the TAC, which is fully briefed. ECF Nos. 121-1 (motion to dismiss); 124 (opposition). On the same day, HPR and Lee filed a motion to dismiss and motion to strike, which are both fully briefed. ECF Nos. 122 (motion to strike); 123 (motion to dismiss); 126 (opposition); 129, 130 (reply papers). On August 29, 2023, Defendants Bejar, Green, Hamby, Larson, Losee, Othniel, Rodriguez, and Tangog filed a motion to dismiss the TAC, which is fully briefed. ECF Nos. 125 (motion to dismiss), 127 (opposition).

## II.   PLAINTIFF'S ALLEGATIONS

The TAC, like its predecessor pleadings, alleges an unlawful arrest that took place on September 20, 2020. That morning, Plaintiff was sitting on a bench in front of HPR's House of Norway cottage in Balboa Park, in San Diego. ECF No. 117 ¶ 11. Plaintiff's bicycle was directly in front of him, leaving approximately 4 feet of clearance of pedestrian traffic. *Id.* Defendant Maury Lee, who is an "agent/employee" of HPR, opened the door of the House of Norway and told Plaintiff that Lee "had a permit for the area and that he wanted [Plaintiff] to leave." *Id.* ¶ 12. Plaintiff responded that he was allowed to stay, and Lee threatened to call a park ranger. *Id.* About five minutes later, Park Ranger Othniel arrived and Plaintiff started video recording him. *Id.* Park Ranger Othniel stated that Lee called and said Plaintiff was blocking the doorway. *Id.* Plaintiff responded that Lee was lying, and asked Park Ranger Othniel if Park Ranger Othniel could see the doorway in fact being blocked by anyone. *Id.* Park Ranger Othniel told Plaintiff "it doesn't matter, it's whatever he says," and that "if he says you have to leave, then you have to leave." *Id.*

Plaintiff was not in fact obstructing the door to the House of Norway. *Id.* Park Ranger Othniel told Plaintiff that if Plaintiff didn't leave, he would call the police. *Id.*

Approximately ten minutes later, two San Diego Police officers arrived, defendants Travis Larson and Eduardo Rodriguez. *Id.* The officers "ordered [Plaintiff] to leave because [Lee] had control of the area and stated [Plaintiff] was trespassing." *Id.* Plaintiff refused to leave, and requested a police supervisor. *Id.* ¶ 13. Approximately five minutes later, Sgt. Bradford Green arrived and stated that Plaintiff was getting a citation for refusing to leave. *Id.* Plaintiff refused to sign the citation and was arrested for trespassing under California Penal Code § 602.³ *Id.* Plaintiff was handcuffed and taken into custody. *Id.*

While in custody, Plaintiff requested emergency medical services due to stress and anxiety caused by Defendants. *Id.* Upon arrival, Doe 1 told Plaintiff, "Eloy you're going to jail." *Id.* Plaintiff was subsequently placed into a hot police vehicle and made several requests to the officers to open the window. *Id.* Plaintiff's left arm started to hurt, and Plaintiff asked for emergency medical services multiple times during the car ride. *Id.* After arriving at the County jail, Plaintiff informed a nurse that his left arm was in pain, but received no medical attention; and had to wait approximately 12 hours to be released. *Id.* ¶ 14. When Plaintiff was transported to the hospital, a doctor told Plaintiff that he had a small fracture on his left arm and the injury was consistent with having his arm pushed behind his back. *Id.*

The TAC also alleges violations of Plaintiff's rights during incidents occurring both before and after September 20, 2020. The first of these also occurred in front of the House

---

³ California Penal Code § 602, covering "Trespasses constituting misdemeanors," includes within the definition of trespass "[r]efusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that they are acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession." Cal. Pen. Code § 602(o).

of Norway. On May 29, 2020, Plaintiff was similarly sitting on a bench in front of the House of Norway, with his bicycle in front of him. *Id*. ¶ 11. That evening, Police Sergeant Lorraine Tangog arrived in a police vehicle and asked Plaintiff if he had any identification. *Id*. Sgt. Tangog told Plaintiff he was breaking the law by loitering. *Id*. Park Ranger Roberto Bejar then arrived on the scene. *Id*. Park Ranger Bejar stated that HPR and House of Norway are "le[s]sees" and "are asking us to remove people from the facades while they are not present." *Id.* Park Ranger Bejar told Plaintiff he could cite him for "encouragement" [sic], patted Plaintiff down for weapons and removed Plaintiff's pocketknife, and cited Plaintiff for violating San Diego Municipal Code § 54.0110.[4] *Id*. Plaintiff then requested paramedic assistance due to stress and anxiety caused by the interaction. *Id*.

The following year, on March 29, 2021, in Balboa Park during the evening, Plaintiff alleges that "a group of people . . . called the police on [Plaintiff] because they thought [Plaintiff] was taking pictures of them." *Id.* ¶ 17. About ten minutes later, defendant Police Officer Sean Losee arrived with his partner, Doe 2. *Id*. Plaintiff immediately requested a supervisor. *Id*. Officer Losee subjected Plaintiff to a pat down and removed Plaintiff's pocketknife. *Id*. Officer Losee and Doe 2 told Plaintiff he was free to leave, but refused to return his pocketknife. *Id*. Sergeant Tyler Hamby arrived and gave Plaintiff his knife back. *Id*.

Plaintiff alleges that each of the above three incidents constituted an unlawful seizure in violation of his Fourth Amendment rights. *Id.* ¶¶ 18-20. Plaintiff also alleges a host of other interactions with law enforcement in Balboa Park that indicated to Plaintiff that he had a right to sit on the bench in front of the House of Norway. *Id.* ¶¶ 11, 14, 15.

---

[4]     San Diego Municipal Code § 54.0110, entitled "Unauthorized Encroachments Prohibited," provides, "It is unlawful for any person to erect, place, allow to remain, construct, establish, plant, or maintain any vegetation or object on any public street, alley, sidewalk, highway, or other public property or public right-of-way, except as otherwise provided by this Code." S.D. Mun. Code § 54.0110.

1    The TAC asserts fifteen claims. Eight are federal claims pursuant to 42 U.S.C.
2    § 1983 for: (1) unlawful seizure in violation of the Fourth Amendment (against the City,
3    HPR, House of Norway, King, Mogstad, Lee, Bejar, Othniel, Tangog, Larson, Rodriguez,
4    Green, Losee, and Hamby), (2) excessive force in violation of the Fourth Amendment
5    (against the City, HPR, House of Norway, Lee, Green, Larson, Rodriguez, and Othniel),
6    (3) failure to train (against the City, HPR, House of Norway, King, and Mogstad),
7    (4) failure to supervise (against the City, Green, Hamby, Tangog, Bejar, HPR, House of
8    Norway, King, and Mogstad), (5) violation of Fourteenth Amendment's Equal Protection
9    Clause (against the City, Larson, Rodriguez, Green, Bejar, Tangog, and Othniel), (6) cruel
10   and unusual punishment in violation of the Eighth Amendment (against the City), (7) violation of First Amendment rights to freedom of speech (against the City, Larson,
11   Bejar, Tangog, Othniel, Green, Rodriguez,[5] HPR, House of Norway, and Lee), and
12   (8) violation of Fourteenth Amendment due process rights (against the City, Bejar, Tangog,
13   Othniel, Green, Larson, and Rodriguez).[6]
14
15       The TAC also includes seven state law claims for: (9) false arrest and imprisonment
16   (against the City, HPR, House of Norway, Lee, Green, Larson, Rodriguez, Tangog, Bejar,
17   and Othniel), (10) intentional infliction of emotional distress (against the City, Doe 1,
18   Othniel, Larson, Rodriguez, Green, HPR, House of Norway, and Lee), (11) negligent
19   infliction of emotional distress (against the City, House of Norway, HPR, Green, Larson,
20   Rodriguez, King, and Mogstad), (12) conspiracy under the California Tort Claims Act
21   (against the City, Larson, Rodriguez, Green, Bejar, Tangog, HPR, House of Norway, Lee,

22

23

24   [5]    Plaintiff does not name Defendant Rodriguez as a defendant in the heading of his
      First Amendment claim, but alleges in the text of that claim that Rodriguez is liable. The
25   Court liberally construes the TAC to assert a First Amendment claim against Rodriguez.
      *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) ("[P]ro se
26   pleadings are liberally construed, particularly where civil rights claims are involved.").
27   [6]    Plaintiff omitted any reference to 42 U.S.C. § 1983 on the title and content of his
      First and Fourteenth Amendment claims. The Court liberally construes these two claims to
28   assert a claim under 42 U.S.C. § 1983.

and Othniel), (13) breach of contract (against the City, HPR, and House of Norway), (14) violation of the Bane Act, California Civil Code § 52.1 (against the City, Othniel, HPR, House of Norway, Lee, Larson, Rodriguez, Green, Losee, Doe 2, Bejar, and Tangog), and (15) malicious prosecution (against HPR, House of Norway, and Lee).[7]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "*Iqbal* explained that '[t]wo working principles underlie' *Twombly*: (1) courts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;' and (2) only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678-79).

Pro se pleadings are to be liberally construed, but a pro se plaintiff must nonetheless allege facts sufficient to state a plausible claim. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

### B.   Motion to Strike

Under California's anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a

---

[7]   This malicious prosecution claim is the only claim in the TAC that was not contained in the SAC.

public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). "[T]he anti-SLAPP statute may be applied to state law claims which . . . are asserted pendent to federal question claims." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999); *see also In re Bah*, 321 B.R. 41, 46 (9th Cir. BAP 2005).

"Litigation of an anti-SLAPP motion involves a two-step process." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1009 (2021). "First, the moving defendant bears the burden of establishing that the challenged allegations or claims aris[e] from protected activity in which the defendant has engaged." *Id.* (internal quotation omitted). Under this first prong, "[t]he focus of the statute is not the form of plaintiff's cause of action, but the defendant's activity that gives rise to the asserted liability." *Midland Pac. Bldg. Corp. v. King*, 157 Cal. App. 4th 264, 272 (Ct. App. 2007). "A defendant meets [its] burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)." *Wang v. Hartunian*, 111 Cal. App. 4th 744, 747–48 (Ct. App. 2003) (quoting *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036, 1043 (Ct. App. 1997)). Under that subdivision, protected activity includes "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e).

"Second, for each claim that does arise from protected activity, the plaintiff must show the claim has at least minimal merit." *Bonni*, 11 Cal. 5th at 1009 (internal quotations omitted). Under this second prong, "the plaintiff must demonstrate that 'the complaint is

legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (quoting *Wilcox v. Super. Court,* 27 Cal. App. 4th 809, 454 (Ct. App. 1994)). "If the plaintiff cannot make this showing, the court will strike the claim." *Bonni*, 11 Cal. 5th at 1009. "[A] prevailing defendant . . . shall be entitled to recover that defendant's attorney's fees and costs." Cal. Civ. Proc. Code § 425.16; *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005) ("California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court.").

Federal courts "review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id*. at 834. "[O]n the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply." *Id*.

## IV.   FEDERAL CLAIMS

Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983. "Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). To state a claim under § 1983, a plaintiff must allege that (1) the conduct he or she complains of was committed by a person acting under color of state law and (2) that conduct violated a right secured by the Constitution and laws of the United States. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1184 (9th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). "Dismissal of a § 1983 claim following a Rule 12(b)(6)

1  motion is proper if the complaint is devoid of factual allegations that give rise to a plausible

2  inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

3  "The statute of limitations for section 1983 actions is determined by state law."

4  *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995). "Section 1983 actions are

5  characterized as personal injury actions for statute of limitations purposes." *Id.* The statute

6  of limitations for personal injury actions in California is two years. Cal. Civ. Proc. Code

7  § 335.1. *See also Owens v. Okure*, 488 U.S. 235, 249-50 (1989) ("[W]here state law

8  provides multiple statutes of limitations for personal injury actions, courts considering §

9  1983 claims should borrow the general or residual statute for personal injury actions.");

10  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (applying § 335.1's two-year

11  limitations period to Section 1983 claim). In contrast, "[f]ederal law[] governs when civil

12  rights claims accrue." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017).

13  "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the

14  injury which is the basis of the action." *Maldonado*, 370 F.3d at 955 (quoting *Knox v.*

15  *Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).

16  For purposes of calculating the statute of limitations where a pleading is amended,

17  Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides that an amendment

18  "relates back to the date of the original pleading" when "the amendment asserts a claim or

19  defense that arose out of the conduct, transaction, or occurrence set out—or attempted to

20  be set out—in the original pleading." "[A]n amendment will not relate back where the

21  amended complaint 'had to include additional facts to support the [new] claim.'" *Echlin v.*

22  *PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018) (citing *Williams v. Boeing Co.*, 517 F.3d

23  1120, 1133 (9th Cir. 2008)).

24  Plaintiff's federal claims are principally based on the September 20, 2020 incident

25  at the House of Norway, and—for the first time in his TAC—on the incidents on May 29,

26  2020 at the House of Norway and on March 29, 2021 in Balboa Park. The TAC was filed

27  on August 8, 2023. Accordingly, any federal claims based on the incidents on May 29,

28  2020 and March 29, 2021 are barred by the statute of limitations.

### A.   Fourth Amendment Claim for Unlawful Seizure (Claim One)

Plaintiff alleges that he was unlawfully arrested on September 20, 2020 without probable cause. Plaintiff asserts this claim against the City; Officers Green, Hamby, Larson, Losee, and Rodriguez; Park Rangers Bejar and Othniel; HPR and the House of Norway; and HPR personnel King and Mogstad.

"Whether a search or seizure is at issue, the relevant inquiry under the Fourth Amendment is one of reasonableness—'[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" *Robinson v. City of Torrance*, No. 2:22-CV-05173-RGK-E, 2022 WL 18216006, at *2 (C.D. Cal. Dec. 15, 2022) (citation omitted). "Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id.*

#### 1.   *The City*

In the Court's Order of June 29, 2023, the Court dismissed Plaintiff's unlawful seizure claim against the City in the SAC for failure to adequately plead a deprivation of rights resulting from official policy, custom or practice pursuant to *Monell*. ECF No. 105 at 6-9. Plaintiff's TAC does not adequately address this failure. This claim is therefore dismissed as to the City.

#### 2.   *HPR Defendants*

In the same Order, the Court dismissed Plaintiff's Section 1983 claim in the SAC against HPR and its agent Lee, on the grounds that they were private rather than state actors. *Id.* at 11. Plaintiff's TAC alleges that the HPR Defendants were "acting under color of state law" in that they were "working in concert with law enforcement." ECF No. 117 ¶ 18.

To state a claim for relief in an action brought under 42 U.S.C. § 1983, a plaintiff must plead that the defendants were "acting under color of state law." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). The Supreme Court has established four

theories under which a private party's actions may constitute state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021). Plaintiff appears to rely on the joint action theory. *See* ECF No. 126 at 2 ("[P]laintiff never stated that HPR or Maury Lee were state policymakers. The federal claims against HPR and Maury Lee are brought against them by the joint actions of said defendan[t]s, working in concert of action with law enforcement.").

Under the joint action test, the Court "start[s] with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). The Court evaluates "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (internal quotation marks and citation omitted). "[T]he private party's conduct of which the plaintiff complains must be inextricably intertwined with that of the government." *Pasadena Republican Club*, 985 F.3d at 1164. Joint action can also be established through a conspiracy. *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989). "To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). "[M]erely complaining to the police does not convert a private party into a state actor." *Collins*, 878 F.2d at 1155.

The TAC does not plead facts that plausibly establish "joint action" between the HPR Defendants and law enforcement. In connection with the September 20, 2020 incident, Plaintiff alleges that Lee called the park rangers to report that Plaintiff was blocking the doorway to the House of Norway. ECF No. 117 ¶ 12. Plaintiff also alleges that he was told by a park ranger months before the incident that HPR was asking to keep people away from the front of the HPR buildings, and was told by a police officer after the incident that Lee had sent a text message complaining about Plaintiff. *Id.* ¶¶ 11, 14. These allegations, based on multiple reports or complaints by HPR, do not amount to joint action.

21-cv-1427-RSH-DDL

*See Deeths v. Lucile Slater Packard Children's Hosp. at Stanford*, No. 1:12-CV-02096-LJO, 2013 WL 6185175, at *10 (E.D. Cal. Nov. 26, 2013) ("[S]upplying information alone does not amount to conspiracy or joint action under color of state law."); *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1313 (N.D. Cal. 2019) (no joint action found when "Plaintiffs only allege that Facebook provided the government with information."); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001) ("A relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy."). This claim is dismissed against HPR, Lee, House of Norway, King, and Mogstad.

### 3.   *Police Officer and Park Ranger Defendants*

Plaintiff's allegations of unlawful arrest on September 20, 2020 involve Officers Green, Larson, and Rodriguez, and Park Ranger Othniel. ECF No. 117 ¶¶ 12-13. These Defendants argue that Plaintiff's claim against them should be dismissed based on (1) the statute of limitations, and (2) Plaintiff's failure to plead sufficient facts. ECF No. 125-1 at 13-16.

Defendants first argue that Plaintiff's claims against them are untimely because the two-year statute of limitations ran on September 20, 2022, and as of that date, Plaintiff had not yet named them as defendants. However, Plaintiff's initial Complaint, filed on August 10, 2021, alleges that he was unlawfully arrested during the incident on September 20, 2020, and includes as defendants "Park Ranger John Doe" and "San Diego Police Department Officers 1-4." ECF No. 1 at 1-2. It is clear that Plaintiff was referring to the park ranger and officers involved in his arrest, even though he was unable to identify them by name until later in the lawsuit. Plaintiff cites Rule 15(c), which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted," where the amendment relates to the transaction originally alleged, and where the newly named defendant has received adequate notice. Fed. R. Civ. P. 15(c)(1)(C). Defendants do not respond to this argument. The Court concludes that this claim, as it relates to the

September 20, 2020 incident, was timely alleged against Green, Larson, Rodriguez, and Othniel.

Defendants next argue that Plaintiff has failed to adequately plead a claim against them because Officers Larson and Rodriguez each "received information from a citizen that Plaintiff was in a location that he was not supposed to be in and observed him illegally at the location independently," and because Sergeant Green merely "responded to a call for a supervisor . . . and arrested Plaintiff for trespassing." ECF No. 125-1 at 14-15. However, this argument misses the thrust of Plaintiff's allegation—that he was not trespassing, and instead was visibly occupying an open space in a public park, and that his arrest for trespassing was therefore unlawful. In another portion of their motion to dismiss addressing Plaintiff's state claims, the Police Officer and Park Ranger Defendants contend that there was indeed probable cause to arrest Plaintiff for trespassing, citing a Special Use Permit issued to HPR. *Id*. at 19 & Ex. B. However, they fail to analyze that Special Use Permit, establish that it was effective at the time of the incident, or explain how the occupancy rights granted therein mean that Plaintiff was trespassing by sitting on a bench outside the House of Norway. The Court declines to dismiss this claim against Green, Larson, or Rodriguez.

As to Park Ranger Othniel, the TAC alleges that he spoke with Plaintiff, asked Plaintiff to leave, and called the police, who thereafter arrived on the scene. ECF No. 117 ¶ 12. The TAC does not allege specific facts as to Park Ranger Othniel's participation in Plaintiff's arrest, but alleges in a conclusory fashion that all the law enforcement defendants—including several officers who were not even present—arrested Plaintiff without probable cause. *Id.* ¶ 19. Plaintiff's allegations fail to plausibly allege facts establishing this claim against Park Ranger Othniel, and this claim is dismissed against him.

As for the remaining Defendants named in this claim—Officers Tangog, Losee, and Hamby, and Park Ranger Bejar—the TAC fails to plausibly allege facts supporting a claim of unlawful seizure. This claim is dismissed against them.

16

21-cv-1427-RSH-DDL

**B.     Fourth Amendment Claim for Excessive Force (Claim Two)**

Plaintiff also brings an excessive use of force claim based on the September 20, 2020 incident. Plaintiff asserts this claim against the City; Officers Green, Larson, and Rodriguez; Park Ranger Othniel; and HPR, the House of Norway, and Lee.

Whether force used by a law enforcement officer was excessive depends on whether it was "reasonable." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. The application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

**1.     *The City***

In the Court's Order of June 29, 2023, the Court dismissed Plaintiff's excessive force claim against the City in the SAC for failure to adequately plead a deprivation of rights resulting from official policy, custom or practice pursuant to *Monell*. ECF No. 105 at 6-9. Plaintiff's TAC does not adequately address this failure. This claim is therefore dismissed as to the City.

**2.     *HPR Defendants***

In the same Order, the Court dismissed Plaintiff's Section 1983 claim in the SAC against HPR and its agent Lee, on the grounds that they were private rather than state actors. *Id*. at 11. Plaintiff's TAC alleges, in a conclusory manner, that the HPR Defendants were "acting under color of state law." ECF No. 117 ¶ 26. However, as discussed in the preceding section, Plaintiff does not plead facts that plausibly establish "joint action" between the HPR Defendants and law enforcement, or any other basis for determining that the HPR Defendants acted under color of state law. This claim is therefore dismissed as to HPR, the House of Norway, and Lee.

17

### 3.    *Police Officer and Park Ranger Defendants*

In connection with the September 20, 2020 incident, the TAC alleges that Plaintiff was "arrested, handcuffed, and led to the police vehicle." *Id*. ¶ 13. He also alleges that while waiting in the police vehicle, his "left arm began to hurt, with the pain increasing as time went on and the inside of the police vehicle began to get extremely hot." *Id*. He alleges that later, after requesting medical attention, being booked into the jail, and being transferred to the hospital, a doctor told him "that he had a small fracture on his left arm and it was consistent with having his arm pushed behind his back." *Id.* ¶ 14. However, apart from stating that he was handcuffed, the TAC is silent on whether force was used against him during his arrest, and on whether any action by any Defendant caused his left arm to hurt. The TAC does not allege facts plausibly establishing excessive force against him. As discussed above, the TAC also fails to allege facts establishing that Park Ranger Othniel arrested him. Accordingly, the Court dismisses the excessive force claim against Officers Green, Larson, and Rodriguez, and Park Ranger Othniel.

### C.    **First Amendment Claim (Claim Six)**

Plaintiff brings a First Amendment claim on the theory that Defendants, in harming him in the September 20, 2020 incident, were retaliating against him for his exercise of his free speech rights. *Id.* ¶¶ 49, 51, 53. He brings this claim against the City; Officers Green, Larson, Rodriguez, and Tangog; Park Rangers Bejar and Othniel; and HPR, the House of Norway, and Lee.

To state a First Amendment retaliation claim, Plaintiff must allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (citing *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)); *see also Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). "To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's

subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks omitted). Specifically, the retaliatory animus must be a "but-for" cause of plaintiff's injury. *Id*. Further, the test as to whether defendant's actions would "chill a personal of ordinary firmness" is "generic and objective." *O'Brien*, 818 F.3d at 933; *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."). "Once a plaintiff has made such a showing, the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *O'Brien*, 818 F.3d at 932.

### 1. *The City*

In the Court's Order of June 29, 2023, the Court dismissed Plaintiff's freedom of speech claim against the City in the SAC for failure to adequately plead a deprivation of rights resulting from official policy, custom or practice pursuant to *Monell*. ECF No. 105 at 6-9. Plaintiff's TAC does not adequately address this failure. This claim is therefore dismissed as to the City.

### 2. *HPR Defendants*

In the same Order, the Court dismissed Plaintiff's First Amendment claim in the SAC against HPR and its agent Lee, on the grounds that they were private rather than state actors. ECF No. 105 at 11. Plaintiff's TAC alleges, in a conclusory manner, that the HPR Defendants were "acting under color of state law." ECF No. 117 ¶ 53. However, Plaintiff does not plead facts that plausibly establish "joint action" between the HPR Defendants and law enforcement, or any other basis for determining that the HPR Defendants acted under color of state law. This claim is therefore dismissed as to HPR, the House of Norway, and Lee.

//

//

//

### 3.   *Police Officer and Park Ranger Defendants*

Plaintiff alleges that on September 20, 2020, Officers Green, Larson, and Rodriguez arrested him without probable cause in retaliation for his "verbally and peacefully disobey[ing] their unlawful orders for him to leave." ECF No. 117 ¶ 50.

Verbally expressing disagreement with or disapproval of police officers may constitute protected activity under the First Amendment. *See Duran v. City of Douglas, Ariz*., 904 F.2d 1372, 1378 (9th Cir. 1990) (holding that First Amendment protected plaintiff's obscene gesture and profanities to officer as "it represented an expression of disapproval toward a police officer with whom [plaintiff] had just had a run-in."); *Brown v. Diaz*, No. 2:17-CV-01157-KJM-AC, 2020 WL 4755357, at *14 (E.D. Cal. Aug. 17, 2020) (finding that plaintiff's statement that he thought he did not need to exit the vehicle was protected speech as it was "an expression of [his] opinion regarding the officer's actions."); *see also City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). Here, Plaintiff does not allege that he had been sitting on the bench in front of the House of Norway as an act of protest or other expressive act; instead, his theory is that after he was told to leave, his acts of "verbally and peacefully disobey[ing] unlawful orders" constituted "protected free speech." ECF No. 117 ¶ 49.

The Supreme Court has held that a plaintiff pursuing a retaliatory arrest claim under the First Amendment "must plead and prove the absence of probable cause for the arrest." *Nieves*, 139 S. Ct. at 1724 (2019). Here, the Court has previously determined that Plaintiff has stated a claim for unlawful arrest against Officers Green, Larson, and Rodriguez. Additionally, the Ninth Circuit "has recognized that a retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013), *abrogated on other grounds by Nieves*, 139 S. Ct. 1715. As to these three Defendants, Plaintiff has adequately pleaded a type of action—an arrest—that would chill a person of ordinary firmness from engaging in future First Amendment activity.

With regard to motivation, Plaintiff alleges in a conclusory manner that the unlawful arrest was retaliation for his disobeying the officers' orders to leave. ECF No. 117 ¶ 51. However, the facts that Plaintiff pleads earlier in the TAC undercut this conclusion. Plaintiff alleges that Officers Larson and Rodriguez ordered Plaintiff to leave "because [Lee] had control of the area and stated [Plaintiff] was trespassing." *Id.* ¶ 12. At that point, according to the TAC, Plaintiff verbally expressed his disapproval of the officers' directions, and requested that the officers call a supervisor. *Id.* Rather than arresting Plaintiff for disagreeing with them, the officers complied and called a supervisor, Sergeant Green. After Sergeant Green arrived, he "stated [Plaintiff] was getting a citation for refusing to leave." *Id.* However, Plaintiff alleges that he "refused to sign the citation and was arrested, handcuffed and led to the police vehicle." *Id.* According to the facts as Plaintiff has pleaded them, his refusal to leave resulted in him being cited; he was arrested only after he declined to sign the citation. Plaintiff later alleges in the TAC that he "was arrested for Vehicle Code 40302 . . . and 602 PC." *Id.* ¶ 13. While the latter (Penal Code) provision relates to trespass, the former (Vehicle Code) provision pertains to situations where a person "refuses to give his or her written promise to appear in court." Cal. Veh. Code § 40302(b). In connection with the September 20, 2020 incident, Plaintiff has not plausibly alleged that the officers' decision to arrest him was retaliation for his protected free speech.

In connection with an earlier phase of the same incident, Plaintiff alleges that Park Ranger Othniel, having received a complaint from Lee, told Plaintiff to leave the premises; and that when Plaintiff "verbally and peacefully disobey[ed]," Othniel called the San Diego Police Department. ECF No. 117 ¶ 50. Plaintiff further alleges that Othniel made a "false report" to the police, without identifying the nature of the false report. *Id.* Elsewhere in the TAC, Plaintiff alleges that Othniel stated over his radio that Plaintiff was "causing a disturbance" and "taking pictures"; but Plaintiff also pleads that he was indeed recording Othniel with his phone. *Id.* ¶ 12. Plaintiff does not plausibly allege that Othniel arrested Plaintiff, and the Court has previously determined that Plaintiff fails to state a claim for

unlawful arrest against Othniel. The Court concludes that Plaintiff has likewise failed to state a First Amendment claim against Othniel. Plaintiff alleges that Park Ranger Othniel responded to a complaint by Lee, told Plaintiff he would call the police if Plaintiff did not leave, and then called the police when Plaintiff did not leave—in effect, referring the matter to the police, who would make their own determination of what to do—rather than retaliating against Plaintiff for Plaintiff's disobedience to Park Ranger Othniel. And the police officers' own decision to arrest Plaintiff came only after they interacted with Plaintiff at some length, decided to issue a citation, and Plaintiff refused to sign the citation. *Id.* Liberally construing the TAC, Plaintiff has not adequately alleged retaliatory action by Othniel that would chill a person of ordinary firmness from engaging in protected First Amendment activity.

Plaintiff's remaining First Amendment retaliation theories—including those against Park Ranger Bejar and Officer Tangog—are based on incidents that are new to the TAC, and that are barred by the two-year statute of limitations. This claim is therefore dismissed as to the Park Ranger and Officer Defendants.

## D. Failure to Train and Failure to Supervise (Claims Seven and Eight)

Plaintiff brings related claims for failure to train and failure to supervise against the City, HPR, the House of Norway, and various individual defendants. He alleges that these failures resulted in the September 20, 2020 incident. ECF No. 117 ¶ 57.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id*. (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or

obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. at 62. The same standard of deliberate indifference applies to failure to supervise claims. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("We see no principled reason to apply a different standard to inadequate supervision.").

The Court previously determined that Plaintiff's SAC failed to allege sufficient facts to establish a pattern of similar constitutional violations by untrained or improperly supervised employees, amounting to actual or constructive notice. ECF No. 105 at 6-8. Plaintiff's TAC alleges additional incidents in support of these two claims. ECF No. 117 ¶¶ 57-73, 76-78.[8] Plaintiff alleges that City employees violated his constitutional rights "over two years" from 2018 to 2020, in connection with "15 separate incidents." *Id*. ¶ 59.

Having reviewed these alleged incidents, the Court concludes that Plaintiff has not plausibly alleged facts to support his claims for failure to train and failure to supervise. None of these incidents involve an arrest for trespassing, much less an unlawful arrest, the crux of Plaintiff's grievance in this lawsuit. The closest appears to be the May 29, 2020 House of Norway incident, in which Plaintiff was patted down and issued a citation. *Id*. ¶ 11. These dissimilarities work against a conclusion that Plaintiff has adequately pleaded

---

[8]   As discussed above, the Court concludes that Plaintiff's federal claims based on the May 29, 2020 and March 29, 2021 incidents are barred by the two-year statute of limitations. However, this statute of limitations does not prevent the Court from considering alleged incidents (such as the May 29, 2020 incident) in determining whether Plaintif has adequately pleaded that a failure to train or a failure to supervise resulted in harm to him in connection with the September 20, 2020 incident.

21-cv-1427-RSH-DDL

his claims. *See, e.g.*, *Mountford v. City of Santa Monica*, No. 2:20-cv-07220 MCS (Ex), 2021 WL 1255188, at *4-5 (C.D. Cal. Feb. 10, 2021) (granting City's motion to dismiss *Monell* claim based on failure to train when facts of seven alleged incidents were not sufficiently similar to facts of subject incident); *Barber v. Cnty. of Orange*, No. SACV 21-00031-CJC(JDEx), 2021 WL 2981014, at *2 (C.D. Cal. July 13, 2021) (granting County's motion to dismiss *Monell* claim when cases plaintiff cited to "involve[d] a wide range of circumstances" surrounding alleged excessive force violations); *Arceo v. Cnty. of Placer*, No. 2:20-CV-02334-TLN-DB, 2022 WL 605411, at *8 (E.D. Cal. Mar. 1, 2022) (dismissing failure to train claim against county where plaintiff failed to allege factually similar examples of prior Constitutional violations); *see also Connick*, 563 U.S. at 62-63 (finding that plaintiff had failed to establish pattern of similar *Brady* violations where previous instances were factually distinct). Additionally, many of the incidents, even as alleged by Plaintiff, do not appear to involve unlawful or actionable conduct by law enforcement; and none of the incidents appear to be corroborated in any way, or based on anything other than Plaintiff's bare allegation. Taken together, these allegations do not plausibly establish deliberate indifference.

To the extent Plaintiff's failure to supervise claim incorporates the allegations from his failure to train claim, it fails for the same reasons as articulated above. ECF No. 117 ¶ 77. Plaintiff's Claims Seven and Eight are dismissed.

### E. Fourteenth Amendment Equal Protection Claim (Claim Nine)

Plaintiff brings a Fourteenth Amendment Equal Protection claim against the City, Officers Green, Larson, Rodriguez, and Tangog, and Park Rangers Bejar and Othniel.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted). The TAC merely alleges that the above Defendants "intentionally misinterpret[ed] and arbitrarily enforc[ed] laws for a malicious purpose." ECF No. 117

¶¶ 82-83. These bare allegations are insufficient to plausibly state an equal protection claim. As such, Plaintiff's equal protection claim is dismissed.[9]

### F.    Fourteenth Amendment Due Process Claim (Claim Ten)

Plaintiff also alleges that the City violated his right to due process under the Fourteenth Amendment by engaging in "improper investigation of crimes." *Id*. ¶ 86. He brings this claim against the City, Officers Green, Larson, Rodriguez, and Tangog, and Park Rangers Bejar and Othniel.

"A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)). Thus, as a threshold matter, to establish a substantive or procedural due process claim, a plaintiff must show a government deprivation of liberty or property. *Capp*, 940 F.3d at 1060; *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). Once a deprivation of liberty or property has been properly alleged, for a procedural due process claim, the court must then determine what process is due under the Fourteenth Amendment. *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1475 (9th Cir. 1992). For a substantive due process claim, a plaintiff is then "required to prove that a challenged government action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996), o*verruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007).

The TAC elsewhere alleges a deprivation of liberty, in that Plaintiff claims he was wrongfully arrested on September 20, 2020. However, his allegation in Claim Ten that his

---

[9]     Additionally, the TAC fails to cure the deficiencies in pleading as to the City that were identified in the Court's June 29, 2023 Order.

unspecified due process rights were violated by "improper investigation of crimes" is conclusory. Plaintiff has failed to plausibly allege a due process claim.[10]

### G.   Eighth Amendment Claim (Claim Fourteen)

Plaintiff's claim for cruel and unusual punishment alleges that the City has a "custom of tolerance of mistreatment and violations of [Plaintiff's] constitutional rights resulting in violation of the Eighth Amendment." ECF No. 117 ¶ 104.

The Eighth Amendment protection against cruel and unusual punishment only applies after a claimant has been convicted and imprisoned. *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."). None of the incidents alleged by Plaintiff relate to imprisonment following conviction. This claim is dismissed.

## V.   STATE CLAIMS

### A.   The City and Police Officer and Park Ranger Defendants

Plaintiff asserts five state law claims for false arrest, intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, and violation of the Bane Act against certain Police Officer and Park Ranger Defendants. He asserts all of the aforementioned state law claims, plus breach of contract, against the City. Plaintiff seeks money damages.

In the Court's Order of June 29, 2023, the Court dismissed Plaintiff's state law claims against the City because he did not allege facts demonstrating or excusing his compliance with the presentation requirements of the California Government Claims Act ("Government Claims Act"). ECF No. 105 at 10. The Government Claims Act establishes certain requirements a plaintiff must comply with prior to filing a lawsuit against a public

---

[10]   Additionally, the TAC fails to cure the deficiencies in pleading as to the City that were identified in the Court's June 29, 2023 Order.

entity for damages. *See* Cal. Gov't Code § 900 *et seq*. A plaintiff must present a claim for personal injury to the public entity no later than six months after the accrual of the cause of action, and for claims relating to any other cause of action, no later than one year after the accrual of the cause of action. *See* Cal. Gov. Code § 911.2(a). The Government Claims Act "applies to actions for damages against local public entities or public employees acting within the scope of that employee's public employment." *See Langley v. Guiding Hands Sch., Inc.*, No. 2:20-cv-00635-TLN-KJN, 2021 WL 1212713, at *7 (E.D. Cal. Mar. 31, 2021) (citing Cal. Gov't Code § 950.2).

Plaintiff alleges the following in the TAC: "Plaintiff Eloy Mascorro filed a claim demand with [t]he City of San Diego within 6 months of the injuries occurrence. The claim was acknowledged by defendant CITY within 45 days of receiving the claim." ECF No. 117 ¶ 5. Plaintiff's allegation that he filed a claim with the City within 6 months and that the City acknowledged the claim within 45 days is an improvement from the SAC, but he still does not sufficiently allege compliance with the claim presentation requirement. Given the multiple incidents and state causes of actions alleged in the TAC, Plaintiff's failure to allege the date his claim was made, and how it was made, or to provide detail about the content of that claim, means he has not adequately pleaded a claim for relief. "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint . . . fail[s] to state facts sufficient to constitute a cause of action." *State of Cal. v. Sup. Ct.*, 90 P.3d 116, 122 (2004); *Keith v. City of San Diego*, No. 22-CV-1226-MMA (DEB), 2023 WL 2347070, at *7 (S.D. Cal. Mar. 3, 2023) (dismissing state law claims where allegation of compliance with Government Claims Act was conclusory); *Wills v. City of Monterey*, 617 F. Supp. 3d 1107, 1127 (N.D. Cal. 2022) (citing Cal. Gov. Code § 910) (dismissing state law claims because "the SAC has not provided sufficient factual support to show compliance with the California Government Claims Act"); *Jones v. Cnty. of San Diego*, No. 20CV1989-GPC(DEB), 2021 WL 4460788, at *6 (S.D. Cal. Sept. 29, 2021) (granting motion to dismiss when "the FAC summarily alleges that he filed a claim as required by section 911.2 but his claim was

denied" because "Plaintiff fails to provide any specific dates as to his claim history in order for the Court to determine whether he has alleged compliance with the Government Claims Act."); *Langley*, 2021 WL 1212713, at *8 (finding plaintiffs did not sufficiently plead facts demonstrating compliance with CTCA when they alleged mere legal conclusions, did not provide tort claims as attachments, and failed to allege specific facts and causes of action referenced in claims); *Perry v. Garcia*, No. 1:12-CV-00312-AWI, 2013 WL 5954802, at *3 (E.D. Cal. Nov. 6, 2013) ("Plaintiff's bald assertion that he complied with the Government Claims Act does not suffice to demonstrate he timely presented a claim or that compliance with the claims statute was excused.").

The Court therefore dismisses Plaintiff's state law claims against Police Officer and Park Ranger Defendants and the City.

### B.   HPR Defendants

Plaintiff brings seven state law claims for false arrest and imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, breach of contract, violation of the Bane Act, and malicious prosecution against the HPR Defendants. HPR and Lee have filed an anti-SLAPP motion to strike all of the aforementioned claims, except for the malicious prosecution claim. ECF No. 122. HPR and Lee have also filed a motion to dismiss the malicious prosecution claim. ECF No. 123. Whether raised in their motion to dismiss or in their motion to strike, HPR and Lee contend that each of Plaintiff's seven state law claims fail to state a claim. The Court agrees.

#### 1.   *Protected Activity*

Before turning to the adequacy of these claims, the Court addresses the first step in the two-step inquiry for an anti-SLAPP motion: whether HPR and Lee have stablished that the claims "aris[e] from protected activity in which the defendant has engaged." *Bonni*, 11 Cal. 5th at 1009. The Court's June 29, 2023 Order concluded that Plaintiff's allegations against HPR in the SAC arose from the protected activity of HPR and Lee, on September 20, 2020, of calling a park ranger to report interference with HPR's building entrance. ECF No. 105 at 13-15. That analysis applies to Plaintiff's TAC as well. Indeed, the TAC alleges

other instances of HPR, or persons apparently associated with HPR, communicating with park rangers or law enforcement. *See* ECF No. 117 ¶¶ 11, 12, 14. Here, as in HPR's previous motion to strike, HPR and Lee have met their burden of demonstrating that Plaintiff's claims against the HPR Defendants arise from protected activity. The burden shifts to Plaintiff to demonstrate that his claims are legally sufficient. *Metabolife*, 264 F.3d at 840. The Court applies the standard applicable to a motion to dismiss under Rule 12(b)(6). *See Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 833.

### 2.   *Statute of Limitations*

Plaintiff's state claims against the HPR Defendants for false arrest and imprisonment, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), conspiracy, breach of contract, and violation of the Bane Act are each time-barred.

The statute of limitations for false arrest and false imprisonment is one year. Cal. Civ. Proc. Code § 340(c). The statute of limitations for IIED, NIED, Bane Act violations, conspiracy, and breach of an implied-in-fact contract is two years. *See* Cal. Civ. Proc. Code § 335.1 (for personal injury actions such as IIED, NIED, and Bane Act claims); *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 792, 598 P.2d 45, 57 (1979) (for conspiracy); Cal. Civ. Proc. Code § 339 (for breach of implied-in-fact contract).

The incidents alleged in the TAC involving the HPR Defendants occurred on May 29, 2020 and September 20, 2020. ECF No. 117 ¶¶ 11, 12. Plaintiff filed the original Complaint on August 10, 2021. It mentioned the House of Norway, as well as an "unknown man" associated with the House of Norway who told Plaintiff to leave the bench and then called the park rangers. ECF No. 1 at 2. However, the Complaint did not allege wrongdoing by the House of Norway or the unknown man, and did not purport to bring a claim against either, either in a named or a "Doe" capacity. *Id.* Instead, Plaintiff sued (in addition to City, the Police Department, and the Fire Department) a "Doe" park ranger, San Diego Police Officers 1 through 4, and EMTs 1 through 3. *Id.* at 1.

29

1    Plaintiff then filed a First Amended Complaint on November 22, 2022 and decided
2    to name HPR, the House of Norway, and "Doe 6" (apparently Maury Lee) as additional
3    defendants for the first time.[11] ECF No. 46. The FAC's allegations against "Doe 6" were
4    based on the same incident described in the Complaint; but over two years after that
5    incident had occurred, Plaintiff decided that "Doe 6" should be included as a defendant as
6    well. The FAC also named HPR and the House of Norway as defendants, but did not
7    specify any basis of liability for them. Because the FAC was filed over two years after the
8    September 20, 2020 incident, Plaintiff's one-year and two-year claims against HPR, the
9    House of Norway, or Lee are time-barred unless those new claims are found to "relate
10   back" to the original pleading.

11   Rule 15(c) governs the circumstances in which an amended pleading "relates back"
12   to the date of the original pleading for purposes of the statute of limitations. Fed. R. Civ.
13   P. 15(c). Where, as here, the claims at issue are brought under California law, Rule 15(c)
14   incorporates California's relation-back rules. *See* Fed. R. Civ. P. 15(c)(1)(A) ("An
15   amendment to a pleading relates back to the date of the original pleading when . . . the law
16   that provides the applicable statute of limitations allows relation back."); *Butler v. Nat'l*
17   *Cmty. Renaissance of California*, 766 F.3d 1191, 1200 (9th Cir. 2014) ("[I]if an
18   amendment relates back under the state law that provides the applicable statute of
19   limitations, that amendment relates back under Rule 15(c)(1) even if the amendment would
20   not otherwise relate back under the federal rules.").

21   Under California law, "[t]he general rule is that an amended complaint that adds a
22   new defendant does not relate back to the date of filing the original complaint and the
23   statute of limitations is applied as of the date the amended complaint is filed, not the date
24   the original complaint is filed." *Woo v. Super. Ct.*, 75 Cal. App. 4th 169, 176 (Ct. App.
25   1999). "A recognized exception to the general rule is the substitution under [California

26

27   ---

28   [11]    The state claims that the FAC brought against the House of Norway and "Doe 6"
     were for intentional infliction of emotional distress and violation of the Bane Act.

Code of Civil Procedure] section 474 of a new defendant for a fictitious Doe defendant named in the original complaint as to whom a cause of action was stated in the original complaint." *Id.* "If the requirements of section 474 are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant filed after the statute of limitations has expired is deemed filed as of the date the original complaint was filed." *Id.* Here, the original Complaint did not treat HPR, the House of Norway, or Lee as defendants—either as "Doe" defendants, or as named defendants—and therefore under California law, his FAC does not relate back to the original complaint.

The result is no different under the federal standard. Rule 15(a)(1)(C) provides that, where an amended pleading adds a defendant, in order for an amended pleading to "relate back" to the date of the original pleading for purposes of the statute of limitations, (1) the amended claim must "arise out of the conduct, transaction, or occurrence" set forth in the original pleading, and (2) the new defendant must have, "within the period provided by Rule 4(m) for serving the summons and complaint," "received such notice of the action that it will not be prejudiced in defending on the merits," and the new defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). The second requirement for "relation back" is not met here. There is no evidence that the House of Norway or Lee, within the 90-day period provided by Rule 4(m) for serving the summons and original Complaint, received notice of that action. Even if they had received a copy of the Complaint, nothing about the Complaint itself would cause them to know, or mean that they should have known, that the action would have been brought against them absent a mistake of identity. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010) ("A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity."). Accordingly, the Court concludes that none of Plaintiff's

1  claims against HPR, the House of Norway or Lee, or against the other HPR defendants
2  (King or Mogstad) relate back to the original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(C).

3      Therefore, each of Plaintiff's state claims against the HPR Defendants except for
4  malicious prosecution is barred by the statute of limitations.[12] Nonetheless, the Court
5  addresses these claims individually below.

6              **3.    *False Arrest and Imprisonment (Claim Three)***

7      Plaintiff brings a false arrest/false imprisonment claim against HPR, the House of
8  Norway, and Lee. "[F]alse arrest and false imprisonment are not separate torts. False arrest
9  is but one way of committing a false imprisonment." *White v. City of Laguna Beach*, 679
10 F. Supp. 2d 1143, 1158 (C.D. Cal. 2010) (citing *Asgari v. City of Los Angeles*, 937 P.2d
11 273 (1997)). The elements of false imprisonment are: "(1) the nonconsensual, intentional
12 confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of
13 time." *Lyons v. Fire Ins. Exch*., 74 Cal. Rptr. 3d 649, 655 (Ct. App. 2008).

14     Here, the TAC alleges that HPR, the House of Norway, and Lee "acted maliciously"
15 to have Plaintiff arrested. ECF No. 117 ¶ 32. Plaintiff does not allege that HPR, the House
16 of Norway, or Lee actually arrested or confined him. And as discussed above, Plaintiff has
17 not plausibly alleged joint action or a conspiracy between the HPR Defendants and law
18 enforcement such that the actions of one can be attributed to the other. As such, Plaintiff
19 fails to allege the "intentional confinement" element as to HPR, the House of Norway, and
20 Lee. This claim is therefore dismissed as to HPR, the House of Norway, and Lee.

21        **4.    *Intentional Infliction of Emotional Distress (Claim Four)***

22     Plaintiff next asserts an intentional infliction of emotional distress claim against
23 HPR, the House of Norway, and Lee. "A cause of action for intentional infliction of
24 emotional distress exists when there is '(1) extreme and outrageous conduct by the
25 defendant with the intention of causing, or reckless disregard of the probability of causing,

26 _____

27 [12]    The HPR Defendants have not argued that Plaintiff's malicious prosecution claim is
28 time-barred.

emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).

In the Court's Order of June 29, 2023, the Court dismissed Plaintiff's IIED claim against HPR in the SAC for failure to adequately plead extreme and outrageous conduct by defendants, and for failure to adequately plead proximate causation. ECF No. 105 at 16. Plaintiff's TAC does not adequately address this failure. Plaintiff alleges that the HPR Defendants acted outrageously by telling him he was not allowed to be on the premises, which was "lying," and by calling law enforcement. ECF No. 117 ¶ 37. He also alleges that the HPR Defendants "intentionally lied to law enforcement about having a permit to control the area," [*see id.*], although Plaintiff does not allege this in his account of the September 20, 2020 incident, [*see id.* ¶ 12]. Similar to the allegations addressed in the Court's prior Order, these allegations do not plausibly establish extreme or outrageous conduct, or proximate causation. This claim is therefore dismissed as to HPR, the House of Norway, and Lee.

### 5. *Negligent Infliction of Emotional Distress (Claim Five)*

Plaintiff next asserts a negligent infliction of emotional distress claim against HPR, the House of Norway, King, and Mogstad. Under California law, an NIED claim is derived from the tort of negligence, for which Plaintiff must allege: "(1) a legal duty to use due care; (2) a breach of such duty; (3) legal cause; and (4) damages caused by the negligent breach." *Williams v. Integon Nat'l Ins. Corp.*, 191 F. Supp. 3d 1126, 1132 (S.D. Cal. 2016). "Since the tort is negligence, duty is an essential element." *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, No. 09MD2087-BTM AJB, 2010 WL 2232151, at *3 (S.D. Cal. June 3, 2010) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993)).

California law distinguishes between "direct victim" cases and "bystander" cases. *See Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1192 (S.D. Cal. 2010) (citing *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072 (1992)). A "direct victim" case "arises where

damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Id*. at 1193 (internal quotation marks and citations omitted). The California Supreme Court has limited "direct victim" claims for NIED to three types of factual situations: "(1) the negligent mishandling of corpses; (2) the negligent misdiagnosis of a disease that could potentially harm another; and (3) the negligent breach of a duty arising out of a preexisting relationship." *Id*., n.6 (citing CACI 1620). California courts have found a special duty of care arises in relationships such as physician-patient, psychotherapist-patient, and mortuary-relatives. *See Clark v. Cnty. of Tulare*, 755 F. Supp. 2d 1075, 1092 (E.D. Cal. 2010) (listing examples).

Here, Plaintiff has not alleged the first element of an NIED claim, that the HPR Defendants had a legal duty to Plaintiff. Plaintiff alleges that the HPR Defendants failed to train and supervise HPR's employees, read and understand HPR's permits/contracts, ensure HPR employees understood the difference between public and private property and what authority the employees have over the property, and obey state and federal rules and regulations. ECF No. 117 ¶ 46. However, he fails to allege any preexisting relationship between him and the HPR Defendants that would give rise to a duty of care. As such, Plaintiff fails to state a claim. *See Olson v. Hornbrook Cmty. Servs. Dist*., No. 2:19-CV-2127-KJM-DMC, 2022 WL 3908135, at *23 (E.D. Cal. Aug. 30, 2022), *report and recommendation adopted as modified on other grounds*, No. 2:19-CV-02127-KJM-DMC, 2023 WL 2751980 (E.D. Cal. Mar. 31, 2023) (dismissing NIED claim when plaintiff did not allege any of the three factual scenarios permitted by California Supreme Court for a direct victim case); *In re Hydroxycut Mktg. & Sales Pracs. Litig*., 2010 WL 2232151, at *3 (dismissing NIED claim because plaintiff failed to plead facts establishing a duty by defendants); *Logan v. VSI Meter Servs., Inc*., No. 10CV2478 L WMC, 2012 WL 928400, at *3 (S.D. Cal. Mar. 19, 2012) (dismissing NIED claim because "none of plaintiff's causes of action in the FAC support an inference that defendant had a legal duty . . . imposed by

law."). This claim is therefore dismissed as to HPR, the House of Norway, King, and Mogstad.

### 6.   *Conspiracy (Claim Eleven)*

Plaintiff brings a conspiracy claim against HPR, the House of Norway, and Lee. "To support a conspiracy claim, a plaintiff must allege the following elements: '(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct.'" *AREI II Cases*, 216 Cal. App. 4th 1004, 1022 (Ct. App. 2013) (quoting *Kidron v. Movie Acquisition Corp*., 40 Cal. App. 4th 1571, 1581 (Ct. App. 1995)).

In its June 29, 2023 Order, the Court dismissed Plaintiff's conspiracy claim in the SAC, on the grounds that it was based in part on his defective IIED claim, and was in other respects conclusory. ECF No. 105 at 17. Plaintiff's TAC alleges again, in a conclusory manner, that defendants' "joint actions violated [his] rights" when he was arrested. ECF No. 117 ¶ 90. It also accuses the defendants of "acting under color of state law." *Id.* However, the TAC fails to allege, much less plausibly allege, the existence of a conspiracy. The Court therefore dismisses the conspiracy claim as to HPR, the House of Norway, and Lee.

### 7.   *Breach of Contract (Claim Twelve)*

Plaintiff brings a breach of contract claim against HPR and the House of Norway. To prevail on a breach of contract claim, a plaintiff must show: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiffs." *Orcilla v. Big Sur, Inc*., 244 Cal. App. 4th 982, 1004 (Ct. App. 2016) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1388 (Ct. App. 1990)).

The Court's June 29, 2023 Order dismissed Plaintiff's breach of contract claim for failure to state a claim. ECF No. 105 at 17-18. In the TAC, Plaintiff alleges an "implied-in-fact" contract between the City, HPR, the House of Norway, and Lee. ECF No. 117 ¶ 95. He appears to allege that that contract arises from an expired special use permit and

the rules of Balboa Park. However, the TAC does not allege the relevant terms of that implied-in-fact contract, identify how a term of that contract was breached, or plead facts establishing that he is a third-party beneficiary. This Claim is therefore dismissed.

### 8.   *Violation of the Bane Act (Claim Thirteen)*

Plaintiff claims that HPR, the House of Norway, and Lee violated the Bane Act. "California Civil Code § 52.1, or the 'Bane Act,' creates a cause of action against a deprivation of a federal or state constitutional right by way of 'threats, intimidation, or coercion.'" *Doe v. City of San Diego*, No. 14CV1941-L-RBB, 2015 WL 13942161, at *7 (S.D. Cal. Mar. 16, 2015) (citing Cal. Civ. Code § 52.1(a)). Plaintiff alleges that statements made by Defendants constituted intimidation, coercion, and threats. ECF No. 117 ¶ 99. However, "[s]peech alone is not sufficient to support an action brought pursuant to [Section 52.1] (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." Cal. Civ. Code § 52.1(k).

In the Court's June 29, 2023 Order, the Court dismissed Plaintiff's Bane Act claim because Plaintiff did not allege that HPR or Lee made a threat of violence against him. ECF No. 105 at 18. In the TAC, Plaintiff alleges that HPR, the House of Norway, and Lee used intimidation by ordering him to leave the area, coerced him by giving false information, and threatened him by telling him that he would receive a citation. ECF No. 117 ¶¶ 98-99. Like the SAC, the TAC merely alleges speech made by HPR, the House of Norway, and Lee, and fails to allege that they made any threat of violence against him in connection with their speech. *See Doe*, 2015 WL 13942161, at *7 (dismissing Bane Act claim based on "demeaning and arrogant speech" because it "fails to allege facts that suggest a threat of violence in connection with this speech"); *Everett v. City of Los Angeles Cnty.*, No. CV 19-07124-CJC(RAOx), 2019 WL 13253366, at *3 (C.D. Cal. Oct. 1, 2019) (dismissing Bane Act claim because "Plaintiff has not alleged that he was threatened with

violence in any way"). To the extent Plaintiff alleges that officers made an arrest without probable cause, these acts were allegedly committed by the named officers, not private actors such as HPR, the House of Norway, or Lee. The Court dismisses the Bane Act claim as to HPR, the House of Norway, and Lee.

### 9.   *Malicious Prosecution (Claim Fifteen)*

Plaintiff brings a malicious prosecution claim against HPR, the House of Norway, and Lee. The HPR Defendants separately move to dismiss Plaintiff's malicious prosecution claim. ECF No. 123. "[T]o establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Lucore v. U.S. Bank, N.A. as Tr. for Certificate Holders of Bank of Am. Funding Corp.*, No. 15-CV-2246 JLS (MDD), 2019 WL 1114876, at \*6 (S.D. Cal. Mar. 11, 2019) (internal quotation marks and citations omitted).

Here, Plaintiff fails to plead the existence of a prior legal action in the TAC. He alleges that HPR, the House of Norway, and Lee participated in his improper arrest, which caused him to be improperly investigated and detained. But the TAC does not assert that criminal proceedings were initiated. To plead a malicious prosecution claim, Plaintiff must allege that a prior legal action terminated in his favor. He fails to do so, and the remaining elements necessarily fail. *See MG Premium Ltd. v. Does*, No. 2:21-CV-08533-MCS-KK, 2023 WL 3432163, at \*2 (C.D. Cal. Apr. 10, 2023) (striking malicious prosecution claim when plaintiff did not allege any prior litigation; "[r]ather, [plaintiff's] claim for malicious prosecution arises solely from the instant litigation, which has yet to conclude."); *Martinez v. Riser*, No. CV 22-5146 PA (KSx), 2022 WL 20804354, at \*3 (C.D. Cal. Nov. 30, 2022) (same). This claim is therefore dismissed as to HPR, the House of Norway, and Lee.

## VI.   LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." "A district court should not dismiss a pro se

21-cv-1427-RSH-DDL

complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood,* 846 F.2d 1202, 1204 (9th Cir.1988)).

Here, over the course of the past twenty-seven months, Plaintiff has filed four operative pleadings. He filed his First Amended Complaint and Second Amended Complaint in response to motions to dismiss filed by Defendants; he was liberally granted leave to amend, and the defense motions were denied as moot. After Defendants again moved to dismiss his Second Amended Complaint, Plaintiff sought to amend yet again; this time, the Court denied leave to amend and ruled on the defense motions, granting the motions to dismiss and the motion to strike—and again granting Plaintiff leave to amend. With the exception of Plaintiff's claims for failure to train and failure to supervise, Plaintiff largely ignored the deficiencies identified in the Court's Order, and repleaded many of the same causes of action against the same previously-dismissed defendants. Additionally, with each of Plaintiff's three prior rounds of amendments, rather than focusing his pleading in response to the arguments made by Defendants or in response to the Court's ruling, Plaintiff simply expands his pleading—adding new Defendants, new claims, and new incidents, and requesting more in damages. In these circumstances, the Court concludes that Plaintiff has had ample time and opportunity to amend his pleading, and that the deficiencies identified herein could not be cured by another round of amendments. Accordingly, the dismissal of claims herein is made without leave to amend, except as noted below.

The Court has concluded, for a second time, that Plaintiff has failed to adequately plead that he satisfied the Government Claims Act claim presentation requirement with respect to his state law claims against the City and the Police Officer and Park Ranger Defendants. The Court will provide Plaintiff with one more chance to satisfy this requirement. Accordingly, within thirty (30) days of the date of this Order, Plaintiff may file a Fourth Amended Complaint. The only addition permitted in the Fourth Amended Complaint is that Plaintiff may add allegations relating to his satisfaction of the claim

presentation requirement. In other words, Plaintiff may not add new causes of action, new defendants, or other new factual allegations; nor may he make any other changes in his Fourth Amended Complaint except for dismissing defendants or claims.

As set forth above in this Order, the Court is (1) dismissing without leave to amend all of Plaintiff's federal claims, except for his claim for unlawful arrest against defendants Green, Larson, and Rodriguez only; (2) dismissing without leave to amend all of Plaintiff's state claims against HPR, the House of Norway, Lee, King, and Mogstad; and (3) dismissing *with* leave to amend all of Plaintiff's state claims against the City and the Police Officer and Park Ranger Defendants. Plaintiff's Fourth Amended Complaint, if he chooses to file one, may not include any claims that this Court has dismissed without leave to amend.

To the extent Plaintiff's Fourth Amended Complaint makes any changes to the Third Amended Complaint other than including allegations about his satisfaction of the claim presentation requirement, or dropping defendants or claims, the Court will strike the Fourth Amended Complaint and the Third Amended Complaint will be Plaintiff's operative pleading, without further leave to amend.

## VII.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On September 28, 2023, Plaintiff filed a motion for summary judgment. ECF No. 131. Defendants HPR and Lee filed an opposition. ECF No. 132. The Court agrees with HPR and Lee that Plaintiff's motion is premature at this stage in the litigation. *See Samuel v. Woodford*, No. 05-05990, 2011 WL 1361533, at *1 (C.D. Cal. Mar. 2, 2011), *report and recommendation adopted*, 2011 WL 1361470 (C.D. Cal. Apr. 8, 2011) (noting that plaintiff's motion for summary judgment was deemed premature in light of defendants' pending motion to dismiss); *King v. City of San Mateo*, No. 17-04618, 2018 WL 587147, at *9 (N.D. Cal. Jan. 29, 2018) (denying as premature motion for partial summary judgment included in opposition to motion to dismiss). Accordingly, the Court denies Plaintiff's motion.

## VIII.  PLAINTIFF'S MOTION FOR LEAVE TO FILE NEW LAWSUITS

On November 11, 2023, Plaintiff filed an ex parte motion for leave to electronically file new lawsuits. ECF No. 134. Plaintiff states that "these new lawsuits involve multiple defendants and involve injuries that are too different from this current lawsuit (21-cv-1427) that they cannot be consolidated." *Id.* at 2. The Court has previously denied a substantially similar motion. ECF No. 116 at 3-4. For the same reasons, Plaintiff's ex parte motion is **DENIED**.

## IX.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** that:

1.  The City's motion to dismiss the TAC, ECF No. 121, is **GRANTED**.

2.  HPR and Lee's motion to dismiss, ECF No. 123, is **GRANTED**.

3.  HPR and Lee's motion to strike, ECF No. 122, is **GRANTED**.[13]

4.  The Police Officer and Park Ranger Defendants' motion to dismiss the TAC, ECF No. 125, is **DENIED** as to Plaintiff's claim for unlawful arrest (Claim One) against Defendants Green, Larson, and Rodriguez only, and is in all other respects **GRANTED**.

5.  With the exception of Plaintiff's claim for unlawful arrest against Defendants Green, Larson, and Rodriguez only, all of Plaintiff's federal claims are dismissed without leave to amend. All of Plaintiff's state claims against Defendants HPR, the House of Norway, Lee, King, and Mogstad are dismissed without leave to amend; those five Defendants are accordingly dismissed from the action. Plaintiff's state claims against the City and against the Police Officer and Park Ranger Defendants are dismissed *with* leave to amend as provided below.

6.  Plaintiff is **GRANTED** leave to file a Fourth Amended Complaint within thirty (30) days of this Order, amending his allegations about satisfaction of the claim presentation requirement. The Fourth Amended Complaint may not include any other

---

[13]  To the extent the HPR Defendants seek to recover fees and costs in connection with its motion to strike, ECF No. 122 at 3, they may file a separate noticed motion.

21-cv-1427-RSH-DDL

changes except for dismissing defendants or claims. If the Fourth Amended Complaint makes any changes not permitted by this Order, it will be stricken. If Plaintiff chooses not to file a Fourth Amended Complaint within the time provided, his Third Amended Complaint will be deemed the operative pleading, and the time for any defendant to respond will begin to run thirty (30) days from the date of this Order.

      7.      Plaintiff's motion for summary judgment, ECF No. 131, is **DENIED**.

      8.      Plaintiff's motion for leave to file new lawsuits, ECF No. 134, is **DENIED**.[14]

      **IT IS SO ORDERED**.

Dated:  November 22, 2023

_____
Hon. Robert S. Huie
United States District Judge

---

[14]    The Parties filed numerous requests for judicial notice in connection with their briefing. ECF Nos. 121-5; 123-1; 125-5. Because the Court does not rely on any of the extraneous documents attached by the Parties in addressing their pending motions, the requests are **DENIED AS MOOT**.

21-cv-1427-RSH-DDL